**SO ORDERED.**

**SIGNED this 08th day of January, 2010.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court
**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| OSCAR HERRERA | 09-52974-C |
| *DEBTOR* | CHAPTER 7 |

### MEMORANDUM DECISION AND ORDER DENYING MOTION FOR STAY PENDING APPEAL

CAME ON for consideration a motion by the debtor for stay pending appeal. The order from which the appeal is taken was this court's order converting this case from chapter 13 to chapter 7.

The notice of appeal was filed December 7, 2009, three days after entry of the order of conversion. It is timely. This motion for stay pending appeal was filed December 21, 2009. Rule 8005 of the Federal Rules of Bankruptcy Procedure does not appear to set any deadlines for the presentation of a motion for stay pending appeal, nor is the court evidently divested of jurisdiction to consider such motions even though the appeal has been perfected. *See In re Ridgemont Apartment Associates, Ltd.*, 93 B.R. 788, 790 (Bankr. N.D.Ga. 1988); FED.R.BANKR.P. 8005. The court set the motion for expedited hearing on December 23, 2009.

The debtor has not offered to post a supersedeas bond. Under the circumstances of this case, such a bond would be neither appropriate nor sufficient. When the case was converted to chapter 7, the United States Trustee promptly appointed a chapter 7 trustee. A meeting of creditors has already been scheduled for January 4, 2010. Unless a stay is obtained, the continued administration of the chapter 7 case alone would likely render the appeal moot. Yet a supersedeas bond would be of no help because the underlying order is not for a monetary judgment – it is simply a conversion to a different chapter. Any stay would thus have to be crafted in such a way as to protect the interests of creditors, while preserving the status quo so that the appellate process could proceed. A stay would also have to address the question of who is in charge of the assets during the period of the appeal. Fortunately, Rule 8005 is sufficiently flexible to permit a court to fashion relief tailored to the needs of a given case. *See In re Gleasman*, 111 B.R. 595, 599 (Bankr. W.D.Tex. 1990), *citing In re Charles & Lillian Brown's Hotel, Inc.*, 93 B.R. 49 (Bankr. S.D.N.Y. 1988).

The standards for granting stays pending appeal in the bankruptcy context are well-established. A court has substantial discretion under Rule 8005 to grant (or deny) a stay pending appeal on such terms as it may deem appropriate, subject to an abuse of discretion standard of review. *In re Target Graphics, Inc.*, 372 B.R. 866 (E.D.Tenn. 2007). In considering such relief, the court is to be guided by criteria substantially similar to those used for preliminary injunctions: (1) the likelihood of success on the merits, (2) the likelihood of irreparable harm, (3) harm to others, and (4) whether the public interest will be served. *Id.*, at 870.

With regard to the first element, likelihood of success on the merits, a movant need only present a substantial case on the merits when a serious legal question is involved, coupled with a showing that a balancing of the equities weighs heavily in favor of granting a stay. *Arnold v. Garlock, Inc.*, 278 F.3d 426, 439 (5th Cir. 2001); *accord In re Texas Equip. Co., Inc.*, 283 B.R. 222,

227 (Bankr. N.D.Tex. 2002). In this case, a serious question of law is indeed involved – may a court convert a chapter 13 case to a chapter 7 case on the oral motion of a party in interest when facts are adduced at the hearing to indicate that dismissal would be inappropriate.[1] The debtor would claim lack of notice (and by implication, a denial of due process), though the court believes that its ruling finds support in the decision of the Supreme Court in *Marrama v. Citizens Bank of Massachusetts, et al. (In re Marrama)*, 549 U.S. 365 (2007).

The court is less certain that a balancing of the equities favors appellant, however. During the hearing on this motion for stay pending appeal, the court heard testimony of the debtor. In that testimony, the debtor tried to make the case that he could make payments approximately equivalent to what the chapter 13 plan payments should have been ($6,000 a month), plus current payments to mortgage holders, totalling some $8,200 a month. The debtor testified that he could raise this money from multiple sources, including the operation of his remodeling business, rental income from the properties he owns (most of which are fully mortgaged), and help from his parents. He offered no documentation to support these claims however, and nothing in either his schedules or in his prior conduct in this and previous cases supported his contention that he could actually come up with this much money every month. More disturbingly, Herrera also testified that he had certain "funds in reserve" totalling (depending on the point in his testimony) $25,000 or so in a safe at his home, or some $50,000 or so in an account at International Bank of Commerce. None of these funds were ever disclosed Herrera's bankruptcy schedules, though Schedule B clearly requires a debtor to do so. The debtor also had no clear solution for the problem of who would be in charge during the pendency of his appeal. The debtor acknowledged that the claims as filed in his case now confirm that he is not eligible for chapter 13 relief under section 109 of title 11 (his secured claims and his

---

[1] The court states the issue as it appears to the court, not as perhaps stated by appellant.

unsecured claims are simply too high). He suggested that the debtor would try chapter 11 – but because the case is now in chapter 7, the debtor had no clear answer to the question of who would be in charge of the assets during the pendency of the appeal. The real import of the stay request seems to have been this: the debtor wants the court to enter an order that would in effect unwind the court's decision to convert this case to chapter 7, and would in essence put the debtor back in possession in a form of "rump chapter 11." The court appreciates that the debtor believes it has a legal question worthy of review on appeal, but the court does not agree that the debtor has a right to an order of stay pending appeal that would unwind that order, in effect reversing the very order from which appeal is being taken. That is more than a stay.

In all events, the serious questions raised about the debtor's real assets, coupled with the debtor's past practice of continuing to use the state courts to enjoin lenders once they get relief from stay from this court, lead the court to believe that the equities do not favor allowing the debtor to stay in continued possession of the rental properties that are at the heart of this bankruptcy, allowing the debtor to have *de facto* if not *de jure* exclusive control over those properties so that the debtor can continue the very pattern of abuse that the court found justified (in part) the decision to convert this case. What is more, the court is concerned that it not place the chapter 7 trustee in the position of being legally responsible for the rental properties, but not otherwise capable of actually controlling those properties. A stay order along the lines proposed by the debtor would put the trustee in that very bad spot – legally liable, but unable to protect himself from all the bad things that could impose liability on him.

On this ground alone, then, a stay pending appeal is not appropriate. However, in the interests of completeness, the court will briefly touch on the remaining elements. With regard to the question of irreparable injury, the court appreciates that, absent a stay, the continued administration

of the chapter 7 liquidation would render the debtor's appeal moot. However, a "majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm." *In re Adelphia Communications Corp.*, 361 B.R. 337, 347 & n.39 (S.D.N.Y. 2007) (Kaplan, D.J.), *quoted by In re General Motors Corp.*, 409 B.R. 24, 31 (Bankr. S.D.N.Y. 2009) (Gerber, B.J.). Still, Judge Gerber acknowledged that the threat of equitable mootness, while not decisive, would "satisfy the requirement of showing *some* irreparable injury – enough to get on the scoreboard with respect to this issue." *General Motors*, 409 B.R. at 31. Given the Fifth Circuit's recent observations regarding equitable mootness in the context of stays pending appeal, *see In re Pacific Lumber Co,* 584 F.3d 229, 242 (5th Cir. 2009), this court is inclined to follow Judge Gerber's cautious approach. The ultimate administration of this case under chapter 7 would likely render any reversal by an appellate court as equitably moot, as the properties in question (all non-exempt) would be liquidated by the trustee, or returned to the secured creditors. Thus, the court gives this element to the debtor.

We have already looked at a balancing of the equities in this case. They substantially favor denying a stay, though the court recognizes that, in one sense at least, the secured lenders might be better off with some sort of stay. With a stay order, the court might be able to condition a stay on prohibiting the debtor access to the state courts for so long as the appeal is pending, thus cutting off further injunction actions in state court. In chapter 7, if the trustee simply abandons these properties, the debtor would be free (at least from any orders of this court) to continue his pattern of filing injunction suits to stop foreclosures. On the other hand, however, if the trustee does *not* abandon the properties, then the debtor will lack standing to seek injunctive relief in state court (because only the trustee owns the properties), so the balancing may work out in favor of denying the stay after all.

The final element under *Arnold* is public policy. If a stay were granted here, then the court

would be in effect giving continued shelter to a debtor whom the court has already found has been abusing the bankruptcy process in furtherance of a larger pattern of frustrating his secured creditors. While the debtor firmly believes he should have the right to force these lenders to renegotiate their loans with him, his belief is not justified. In fact, he has no such right. The debtor should not be allowed to use the bankruptcy process itself – and certainly not a stay from this court – as further leverage to beat his secured creditors into submission. What is more, the debtor's failures to disclose assets puts the debtor dangerously close to criminal liability. *See* 18 U.S.C. § 152. It strikes the court that public policy counsels against affording a debtor continued special protections when the court already has probable cause to believe that a bankruptcy crime has been committed.

If a party fails to satisfy any one of the four requirements for a stay pending appeal, then the court will be acting within its discretion to deny the stay. *See In re Dakota Rail, Inc.*, 111 B.R. 818, 820 (Bankr. D.Minn. 1990). Here, the moving party has failed to persuade this court that either a balancing of the equities or public policy favor granting a stay pending appeal. Indeed, the court is not satisfied that the element of irreparable harm is entirely satisfied, though there is some evidence on the point (the court presuming the *bona fides* of the representations in the appellant's motion). Of course, the appellant is free to present his case to the district court, which may have a different view of the matter. This court, however, denies the motion for the reasons stated in this decision.

# # #